**In re The MARRIAGE OF Wendell L. HOSKINS, II, and Lori L. Hoskins.**

**Wendell L. Hoskins, II, Petitioner–Appellant,**

v.

**Lori L. Hoskins, Respondent–Respondent.**

No. 26434.

Missouri Court of Appeals, Southern District, Division One.

June 7, 2005.

John L. Oliver, Jr., R. Scott Killen, Cape Girardeau, for Appellant.

Daniel T. Moore, Poplar Bluff, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Wendell L. Hoskins (Father) and Lori L. Hoskins (Mother) were divorced in 2000. Father, who is an attorney, drafted the original Parenting Plan, which granted the parties joint legal custody with Mother to have the "primary care, custody and control" of their child. The Form 14 attached to the dissolution decree indicated child support should be $1,257.00 per month; however, the parties agreed to child support in the amount of $1,750.00 per month, "provided that [Father] and [Mother] each contribute each month a minimum of $250.00 to an Education IRA, or other financial vehicle agreed to by the parties, for the purpose of funding the college education of the minor child."[1] Contrary to section 452.377.11, the decree did not have a provision regarding the relocation of the minor child.[2]

Father filed his first Amended Motion to Modify Judgment of Dissolution of Marriage in January 2003. In the motion, he claimed that the parties were awarded joint legal and physical custody of the child and that there was a change of circumstances so substantial and continuing as to make the terms of the original judgment unreasonable. He claimed the minor child was approaching school age, that Mother had failed to provide a stable and suitable home environment for the minor child, that Father could provide the male minor child with a stable and positive home environment near members of his family, and the best interests of the minor child would be served with the child primarily residing with his father.

Mother filed an Answer and Cross Petition requesting an increase in child support, a change to the educational fund, a change in the visitation schedule, and a request for attorney's fees and litigation costs. She specifically prayed for a modification of the Parenting Plan and Form 14 in accordance with her proposed Parenting Plan, which was attached to her pleadings. In the Parenting Plan, Mother requested the parties alternate the tax deduction for the minor child and that Father maintain a policy of health insurance and pay seventy-five percent of the uncovered or deductible amounts.

The trial court found that there was not a substantial change in the circumstances of the minor child or of his custodial parent sufficient to warrant modification of custody nor was there a substantial change of circumstances so as to make the terms of the original child support award unreasonable; however, the court found it in the best interests of the minor child to change the visitation schedule. The court required Father to pay for health insurance coverage and pay eighty percent of the uncovered expenses and awarded Mother the income tax exemption in alternating years.

---

1. It is not clear from that order what was the obligation of each party if one or the other failed to contribute to the education IRA. These additional terms are not at issue in this appeal.

2. All statutory references are to RSMo 2000 unless otherwise indicated.

Father brings five points on appeal: (1) a claim regarding the failure of the court to modify custody of the minor child; (2) a challenge to the court's Parenting Plan; (3) a complaint of the judgment ordering Father to pay for health insurance coverage and pay eighty percent of the uncovered medical expenses; (4) a failure to reduce Father's child support payment; and (5) a protest of the award of attorney's fees to Mother.

Father's first point reads:

The trial court erred by failing to modify the parties' original decree of dissolution to award Appellant primary physical custody because the trial court's judgment erroneously declared and applied the law and was against the weight of the evidence in that the trial court applied a standard outside of that mandated in section 452.410 RSMo 2004; the trial court ignored evidence demonstrating a change in circumstances; and the trial court's judgment did not consider the factors set forth in section 452.375.2 RSMo 2004.

Father's point relied on must comply with Rule 84.04(d)(1),[3] which provides:

Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state, concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

This rule outlines three requirements for a proper point relied on: (1) a statement of the action or ruling complained of; (2) a statement of why the ruling was erroneous; and (3) citations to evidence that supports the position the appellant asserts the trial court should have taken. *Coleman v. Gilyard*, 969 S.W.2d 271, 273 (Mo. App. W.D.1998). Father's point is deficient. Abstract statements of law do not comply with this rule. *Patterson v. Waterman*, 96 S.W.3d 177, 179 (Mo.App. S.D. 2003). Father fails to state the facts of this case that support his position and cites to no evidence demonstrating a change of circumstances to support his claim. Compliance with this rule allows us to verify the evidence supporting his argument; without such compliance, we would be forced to search the record to discover the facts that substantiate a point on appeal and would effectively act as an advocate of the non-complying party, which is not the function of the appellate court. *Boyd v. Boyd*, 134 S.W.3d 820, 824 (Mo.App. W.D. 2004).

Father compounds the deficiency of his point relied on by a legal argument that is dizzying. He commences his argument with the generally recognized standards of review set forth in *Murphy v. Carron*[4] and *In re D.M.S.*,[5] but then proceeds to challenge the giving of deference to the trial court in custody cases by stating that the pronouncement is not contained in Rule 84.13(d), nor is it logical. He concludes by arguing:

---

3. All rule references are to Supreme Court Rules (2004), unless otherwise indicated.

4. An appellate court will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

5. "Greater deference is given to a trial court's determination in matters involving child custody than in any other type of case." *In re D.M.S.*, 96 S.W.3d 167, 171 (Mo.App. S.D. 2003).

the idea of deference by three to the opinion of one, appears highly counterintuitive—would one not expect the combined wisdom of the three to exceed the choice of the one—where on any given day or days the "one" is subject to the vicissitudes of life—maybe having a "bad day" or "be distracted" or "be displeased" that the case did not settle[.]

We decline to adopt Father's standard of review. We shall give greater deference to the trial court's determination of child custody matters.

■ Father further challenges cases which indicate that the change in circumstances, pursuant to section 452.410.1, must be substantial and continuing changes. While acknowledging that previous case law has indicated that the change in circumstances must be substantial and continuing, Father argues that courts cannot legislate and add requirements to the plain language meaning and intent of statutes. In other words, Father asserts the standard is simply any change in circumstances. Father argues we should not follow the supreme court's interpretation of section 452.410.1, but rather follow the wording of the statute. In doing so, Father maintains we would actually be following supreme court precedent regarding the interpretation of statutes and acting in accord with the dictates of the Missouri Constitution. We shall follow the latest decisions of the Missouri Supreme Court, as we are constitutionally bound to do. Mo. Const. art. V, § 2; *State ex rel. FAG Bearings Corp. v. Perigo*, 8 S.W.3d 118, 123 (Mo.App. S.D.1999). "Accordingly, we are required to follow the line of cases applying the 'substantial' component to the requirement of a change of circumstances in a modification of custody case." *In re Marriage of Eikermann*, 48 S.W.3d 605, 609 (Mo.App. S.D.2001).

■ Although Father's point might warrant a dismissal of the point for a deficient point, because this is a child custody case, we have reviewed Father's allegations *ex gratia*. We find no error in the refusal of the trial court to modify custody. It appears from his argument that Father relies upon five changes to support his claim of a change of circumstance. First, Father argues that because the child is on the verge of kindergarten, he now needs "a firm and substantial male figure commonly known and referred to as a 'father figure.'" Next, he argues that Mother has moved too often to provide a stable home for the child. Father further contends that the minor child has dental problems, which are unexplainable because there is "no family history of bad teeth or dental hygiene problems." Father adds to his list of changes of circumstances that Mother is financially unstable because she did not properly open a college investment fund and she drives a more luxurious car than at the time of the divorce. Finally, Father claims he was denied visitation because she made the minor child afraid of horses, livestock, and guns, even though "[the child's] heritage on both sides of the family is rural." He further complains about Mother's interpretation of the decree regarding holiday visitations.

None of Father's complaints, individually or collectively, raise any inference that the court erred in refusing to modify custody. The court specifically found that any moves made by Mother were approved by Father and even encouraged on several occasions. The court further found that the moves were made in good faith, for reasons which Father did not oppose, and had no impact on the ability of Father to exercise his periods of temporary custody and visitation. That finding is amply supported in the record. The court specifically found Mother had provided not only frequent, continuing and meaningful con-

tact between Father and the minor child, but she had also allowed extra visitation on numerous occasions at the request of Father. The court further found that Mother did provide a stable environment for the minor child in Cleveland, Mississippi.

■ We can only assume that the court did not directly address Father's contention regarding the need for a "father figure" because it is nonsensical on its face. The statement assumes that the child did not need a "father figure" at the time of the dissolution when Father agreed that *Mother* should have custody or that Father cannot be a "father figure" without having more custodial time. We reject those contentions as well.[6] Furthermore, the claim that the child was about to commence school has never been a ground to modify custody in and of itself. Father did not provide evidence of any medical or dental neglect.

■ The trial court noted that changes were necessary to remedy any "minor" disagreements in the interpretation of the original Parenting Plan, which, as we noted, was drafted by Father. The court found the correct standard for a change in visitation under section 452.400.2 is that the changes must be in the best interests of the child. Due to the change in the child's school schedule, which both parties acknowledged was necessary, the court set forth a more specific visitation and temporary custody plan. Substantial evidence supports the trial court's finding that there is no change of circumstances warranting a change of custody. Point I is denied.

Point II suffers from the same infirmities. Point II reads:

The trial court erred when it ordered the visitation provisions of the "Court's Parenting Plan" because the "Court's Parenting Plan" as adopted misapplies the law in that the "Court's Parenting Plan" restricts, limits and significantly decreases the visitation of Appellant without a specific finding that "visitation would endanger the child's physical health or impair his emotional development in violation of section 452.400.2 RSMo.2004."

■ Again, in the context of this case Father fails to indicate in what way the court's Parenting Plan restricted, limited or significantly decreased Father's visitation. His argument section provides no guidance as it does not indicate just how Father's visitation was in any way restricted. The only definite change in the visitation plan is the termination of Friday during alternating weeks, but Father admits that the Friday visitation had to be eliminated because the child is now of school age. Father claims that is a decrease of twenty-six days; however, Father apparently included all the summer months in his calculation and all holidays. Although noting the apparent increase in time during the summer months, Father claims the change from three nonconsecutive two-week periods in the original plans to the entire summer break did not compensate Father for the missed Fridays. To support his claim that the summer visitation is actually a decrease in visitation, Father appears to rely upon Exhibit 18b; however, no such exhibit was admitted.[7] Because we cannot even discern whether the assumption of Father's point, which is that his visitation was in some way restricted,

---

6. We direct Father's attention to section 452.375.8 where the legislature has mandated that no preference may be given to either parent in awarding custody because of the sex of the parents or child.

7. There is an Exhibit 18d noted in the transcripts, which is a "printout of email," but that exhibit has not been given to the court.

is accurate as a matter of fact, we deny his point.[8]

Father's third point claims the trial court erred in adopting its own Parenting Plan, which required Father to pay for health insurance coverage for the minor child, to pay eighty percent of the uncovered medical expenses and awarded Mother the income tax exemption in alternating years. Father argues the trial court made a specific finding that the evidence did not demonstrate a substantial and continuing change in circumstances sufficient to make the original child support award unreasonable, Mother did not request the changes in her pleadings, and no evidence was adduced to support the changes. We find no merit to any of Father's contentions.

 Mother filed a counterclaim in response to Father's motion to modify; the counterclaim included a Parenting Plan, which contained a change in the income tax deduction and a change in which parent provided health insurance. Clearly, the pleadings indicated relief was sought in those areas. Even if the pleadings did not, evidence regarding insurance was introduced at the trial. The parties tried the issues by consent. Rule 55.33(b) provides that " '[w]hen issues not raised by the parties are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.' " *Conduff v. Stone*, 968 S.W.2d 200, 205 (Mo.App. S.D. 1998) (quoting *Rice v. James*, 844 S.W.2d 64, 67 (Mo.App. E.D.1992)). The failure to make a timely and specific objection to evidence on the ground that it is beyond the scope of the parties' pleadings consti-

tuted consent for determination of issues raised thereby. *Warren Davis Properties V, L.L.C. v. United Fire and Cas. Co.*, 4 S.W.3d 167, 171 (Mo.App. S.D.1999). Therefore, the issue was before the court by Mother's pleadings and by Father raising the issue at trial.

Furthermore, we find that *Wilson v. Whitney*, 81 S.W.3d 172 (Mo.App. S.D. 2002), controls the resolution of this question. In *Wilson*, we found that:

> Courts are bound by the statutory terms imposed by the legislature in addressing issues related to dissolution of marriages. This includes medical expenses related to dependent children for whom child support is ordered.

Section 454.603 provides, as applicable here:

> 1. At any state of a proceeding in which the circuit court . . . has jurisdiction to establish or modify an order for child support, . . . the court . . . shall determine whether to require a parent to provide medical care for the child through a health benefit plan.
>
> . . .
>
> 5. The court shall require the obligor to be liable for all or a portion of the medical or dental expenses of the minor child that are not covered by the required health benefit plan coverage if:
>
> (1) The court finds that the health benefit plan coverage required to be obtained by the obligor or available to the obligee does not pay all the reasonable and necessary medical or dental expenses of the minor child; and

---

8. We further note that Father provided absolutely no legal analysis as to what constitutes a restriction in a visitation plan. Because we cannot even find a factual basis for any restriction, we do not address the legal analysis. We do note that at the beginning of trial, Father's counsel announced that the parties had reached an agreement as to a "custody neutral" Parenting Plan, which would apply no matter what the outcome of the custody issue. The court's plan appears to be the same plan that Father testified was in the best interest of the minor child.

(2) The court finds that the obligor has the financial resources to contribute to the payment of these medical or dental expenses; and

(3) The court finds the obligee has substantially complied with the terms of the health benefit coverage.

Section 454.603.1 directs a trial court to determine whether to require a parent to provide medical care through a health benefit plan for a child who is the subject of a proceeding seeking modification of child support. The directive is not conditioned on a party specifically seeking modification of health care directives included in a prior judgment. Upon imposing an obligation on a parent to provide medical care for a child by means of a health benefit plan, § 454.603.5 requires the court to "require the obligor to be liable for all or a portion of the medical or dental expenses of the minor child that are not covered by the required health benefit plan" upon finding certain facts.

*Id.* at 183–184 (citations omitted).

■■■■ We find that even though the court found no change of circumstances to warrant a change in the child support, the court had an independent duty to ascertain whether health insurance was available to Father and, subsequently, to enter the amount of the deductibles and co-pays that each of the parties was to pay. At trial, Father complained about Mother not having insurance. Father's original Form 14 indicated that Mother was to maintain health insurance. Given the substantial disparity in the parties' income, the court did not err in ordering Father to pay eighty percent of the uncovered medical costs. Substantial evidence supports that determination.

■■ As to the income tax exemption, we initially note that a trial court has broad discretion in awarding the income tax deduction. *Blechle v. Poirrier,* 110 S.W.3d 853, 856 (Mo.App. E.D.2003). Nevertheless, the law is very clear as to how the court has the authority to allow the dependency exemption to the non-custodial parent.

> Under the current 26 U.S.C. § 152(e), the trial court does not have the authority to merely order that the non-custodial parent get the dependency exemption. *Vohsen v. Vohsen,* 801 S.W.2d 789, 791 (Mo.App. E.D.1991); 26 U.S.C. § 152(e)(1). To effectuate the allocation of the tax exemption to the non-custodial parent, the trial court must order the custodial parent to annually sign the prescribed declaration described in 26 U.S.C. § 152(e)(2)(A).

*Simon–Harris v. Harris,* 138 S.W.3d 170, 183 (Mo.App. W.D.2004).

■■ Under federal law, the parent who has custody for the greater portion of the calendar year is entitled to the exemption. *Id.* at 182.[9] The original judgment was not a valid authorization of Father to take the dependency deduction; neither does the judgment that is the subject of this appeal order Mother to annually sign the prescribed declaration described in 26 U.S.C. § 152(e)(2)(A). Therefore, both the original order allowing Father to take the deduction and the supposed change in the dissolution decree granting Father alternating years of the dependency deduction were ineffective to grant Father the deduction. Father does not raise that issue on appeal and we decline to decide the effectiveness of such an order in the modification. We find no merit to Father's

9. We note that under the assumptions made on the Form 14, the custodial parent receives the dependency exemption every year.

complaint that Mother was awarded the deduction in alternating years. Point III is denied.

Father's Point IV states:

The trial court erred when, having denied Appellant's motion to modify primary custody, it refused to reduce Appellant's child support payment because the trial court misapplied the law in that (1) the trial court improperly rejected Appellant's Form 14 calculated in accordance with Rule 88.01; (2) the Form 14 used by the trial court did not follow the comments and directions for completing Form 14 involving depreciation; and, (3) the burden of proof applied by the court was improper.

 Once again, Father fails to grace us with how the facts in the context of this case support his claim that child support should have been reduced. In his argument, it appears Father is complaining that the court did not follow Father's Form 14 in which he used depreciation expenses to reduce his income. Although Father does not state it in his point relied on, he must be arguing that there was a substantial and continuing change of circumstances which made the original child support unreasonable. Father's argument is that the original Form 14 indicated that Father's income was at $9,825.00, whereas his current income was only $3,343.00. He arrives at that calculation by subtracting from his income the depreciation expenses he used in his federal tax returns; Father claims trial court error in adding back the depreciation expenses to his income. Without belaboring the point, substantial evidence supports the court's finding that

there was no change of circumstances regarding child support in that Father's net income from his law practice alone approximated $125,000.00. The court was entirely justified in rejecting his testimony that he lost money in his farming, rental, and trucking businesses; the court was further justified in adding back the depreciation in all of the business "losses" in conformance with the directions and comments for use to the Form 14. The court accepted the Form 14 submitted by Mother as being in compliance with Supreme Court Rule 88.

 Furthermore, as noted earlier, the trial court specifically found that the parties deviated from the Form 14 that was submitted to the court with the original dissolution. The court, noting *Potter v. Potter*, 90 S.W.3d 517, 522 (Mo.App. S.D. 2002), found it would be error to use a new Form 14 to establish a prima facie showing of a substantial and continuing change of circumstances to modify child support when the Form 14 was not used as the basis for the child support amount in the original judgment. Father testified that in the original dissolution he arrived at the amount of child support by calculating how much support Mother needed for the child. Father did not factually prove a decrease in his income or a decline in his overall financial standing nor did he establish a prima facie showing pursuant to section 452.370. Point IV is denied.[10]

 Finally, Father complains that the trial court erred regarding the award of attorney's fees. The trial court ordered Father to pay $7,500.00 toward Wife's attorney's fees. Although admitting that the award of attorney's fees is committed to

---

10. Father further raised issues in his argument that the court's actions in refusing to modify the Form 14 were unconstitutional, violated the Separation of Powers Doctrine and violated the Missouri Constitution. He failed to present any of these complaints to

the trial court; thus, they are not preserved. See *Wagner v. Piehler*, 879 S.W.2d 789, 793 (Mo.App. W.D.1994) (finding that a claim of error not properly presented in the trial court will not be considered on appeal).

the sound discretion of the trial court, nevertheless, Father claims it was against the weight of the evidence and a misapplication of the law because the court "failed to take into account the conduct of respondent and the relative merits or lack of merits of her claims and defenses as required by section 452.355 RSMo." [11] When considering the financial resources of the parties, the merits of the case, and the actions of the parties, we find no abuse of discretion. *See Cohen v. Cohen*, 73 S.W.3d 39, 55–56 (Mo.App. W.D.2002) (finding that a court awarding attorney's fees must consider all relevant factors including the financial resources of the parties, merits of the case, and actions of the parties during the pendency of the action).

We note that Father initiated the Motion to modify custody and, despite his protestations to the contrary, he failed in that motion. The court decided every factual allegation against him. Although Father cites Mother's choice of a luxury automobile, an Isuzu Axiom, as evidence of her wealth, he failed to note his own testimony that he has three cars, as well as access to numerous trucks and other vehicles. Furthermore, Father did not offer a Statement of Property and Debt, so the court was free to surmise that Father had ample financial resources to pay the attorney's fees when it was balancing the relative financial resources of the parties. There was testimony that in addition to his law practice, Father farmed approximately 1500 acres of farm, owned a trucking business and a rental business. We do not note any conduct on Mother's part which would negate an award of attorney's fees. Point V is denied.

The judgment is affirmed.

11. Again, Father does not grace us with which actions of Mother constituted conduct that should be considered in the award of attorney's fees.

BATES, C.J., concurs.

GARRISON, P.J., concurs in result only.